# MOTION INFORMATION STATEMENT

**Docket Number(s):** 20-2622

**Caption [use short title]**

**Motion for:** Vacatur and Remand (on consent)

State of New York v. U.S. Immigration and Customs Enforcement

**Set forth below precise, complete statement of relief sought:**

New York seeks vacatur of the judgment below and remand so that the complaint can be voluntarily dismissed without prejudice. Appellants consent to the requested relief.

**MOVING PARTY:** State of New York
- [ ] Plaintiff
- [ ] Defendant
- [ ] Appellant/Petitioner
- [✓] Appellee/Respondent

**OPPOSING PARTY:** U.S. Immigration and Customs Enf't

**MOVING ATTORNEY:** Ari Savitzky

**OPPOSING ATTORNEY:** Tomoko Onozawa

*[name of attorney, with firm, address, phone number and e-mail]*

State of New York, Office of the Attorney General
28 Liberty Street, New York, NY 10005
T: (212) 416-6073 / Ari.Savitzky@ag.ny.gov

U.S. Attorney's Office, Southern District of New York
86 Chambers Street, New York, NY 10007
T: (212) 637-2721 / tomoko.onozawa@usdoj.gov

**Court-Judge/Agency appealed from:** U.S. District Court for the Southern District of New York (Rakoff, D.J.)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes [ ] No (explain):

Opposing counsel's position on motion:
[✓] Unopposed [ ] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
[ ] Yes [✓] No [ ] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [ ] No
Requested return date and explanation of emergency:

Is oral argument on motion requested? [ ] Yes [✓] No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [✓] No   If yes, enter date:

**Signature of Moving Attorney:**
/s/ Ari Savitzky    **Date:** July 20, 2021    **Service by:** [✓] CM/ECF  [ ] Other [Attach proof of service]

Form T-1080 (rev. 12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

State of New York, et al.,

    *Plaintiffs - Appellees*,

v.

U.S. Immigration and Customs
Enforcement, et al.,

    *Defendants-Appellants.*

No. 2020-2622

# MEMORANDUM IN SUPPORT OF CONSENT MOTION TO VACATE THE JUDGMENT BELOW

The federal government filed this appeal from a judgment by the United States District Court for the Southern District of New York (Rakoff, J.) declaring unlawful a then-extant policy of U.S. Immigration and Customs Enforcement (ICE) regarding civil immigration arrests in and around state courthouses, as embodied in a January 2018 directive (the "2018 Directive"), and enjoining such arrests. In April 2021, following a change in presidential administration, ICE revoked the 2018 Directive and replaced it with interim guidance outlining more limited circumstances under which civil immigration enforcement may occur in or near state courthouses. In light of this significant change, the parties

1

agree that the judgment below should be vacated, and the case remanded to the district court so that the action can be voluntarily dismissed without prejudice. Plaintiffs accordingly respectfully request that this Court issue an order to that effect. Defendants consent to such relief.

## BACKGROUND

### A. The 2018 Directive

Prior to 2017, as explained in 2014 guidance, ICE followed a policy that limited immigration enforcement actions at or near courthouses to "Priority 1 aliens" (i.e., those "who pose a danger to national security or risk to public safety"); prohibited enforcement actions against "collateral" individuals, such as those who merely accompany a "target alien" to court; and required arrests to be conducted, wherever practicable, in non-public areas and with the collaboration of court security staff. *See, e.g.*, JA 184, 1539-1544; *see also* JA 235; *accord* SPA 39-40 & nn. 4, 6; ICE Br. 6-7. This "very limited and circumscribed arrest policy" resulted in few civil immigration arrests in and around New York courthouses before 2017 (SPA 4, 37, 40 n.5).

In January 2017, shortly after taking office, President Trump issued an Executive Order providing new directives for federal

2

immigration enforcement activities. *See* JA 179-183 (reproducing Exec. Order No. 13,768, *Enhancing Public Safety in the Interior of the United States*, 82 Fed. Reg. 8,799 (Jan. 30, 2017)). In response, the Department of Homeland Security (DHS) announced that it was rescinding its prior enforcement priorities. JA 205-217 (reproducing DHS Secretary Kelly, *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017) (the "Kelly Memo")). The number of ICE civil immigration arrests conducted in or around New York courthouses increased substantially beginning in February 2017. *See* SPA 43 & nn. 9-10. In January 2018, ICE formalized its new courthouse arrest policy by promulgating the 2018 Directive. JA 57-60 (reproducing the 2018 Directive).

**B. This Litigation**

In September 2019, the State of New York and the Kings County (Brooklyn) District Attorney brought suit challenging ICE's new courthouse civil arrest policy as contrary to law, arbitrary and capricious, and unconstitutional. The complaint asserted that ICE's policy was unlawful because the Immigration and Nationality Act (INA) had incorporated or at least not abrogated New York's longstanding common-

3

law privilege against civil arrests in and around courthouses; the complaint also asserted that the policy was arbitrary and capricious in violation of the Administrative Procedure Act (APA). As relief, plaintiffs sought a declaration that the 2018 Directive was unlawful and an injunction against defendants implementing the 2018 Directive. JA 28.

In June 2020, the district court granted summary judgment in plaintiffs' favor. SPA 37-60. The court concluded that the 2018 Directive exceeded ICE's statutory authority under the INA. SPA 47-49. In addition, the court held that the 2018 Directive was arbitrary and capricious because ICE had failed to "provide a reasoned explanation for [its] departure from its prior policy." SPA 55. However, the court expressly declined to address whether "the very limited and circumscribed arrest policy embodied in ICE's 2014 guidance violated the law," reasoning that "[a]s a practical matter, [ICE's prior policy] was unlikely to raise a threat of the disruptions and interruptions that the present policy presents." SPA 40 n.5.

The court accordingly granted plaintiffs' request for "injunctive and declaratory relief against ICE's current courthouse arrest policy as set

4

forth in an ICE Directive issued in January 2018." SPA 38. Specifically, the judgment provides:

> [T]he Court declares ICE's policy of courthouse arrests, as now embodied in the [2018] Directive, to be illegal, and hereby enjoins ICE from conducting any civil arrests on the premises or grounds of New York State Courthouses, as well as such arrests of anyone required to travel to a New York State courthouse as a party or witness to a lawsuit.

SPA 60, 61.

**C.     The Current Administration Revokes the Challenged Policy**

Defendants appealed. SPA 62. Following the change of presidential administration, however, President Biden rescinded President Trump's January 2017 Executive Order, *see* Executive Order No. 13,993 (January 20, 2021), and DHS soon after rescinded the Kelly Memo and ordered a review of the Department's "policies and practices concerning immigration enforcement," *see* Acting DHS Sec'y David Pekoske, Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities (Jan. 20, 2021). In light of these executive actions, this Court granted the federal government's request to hold this appeal in abeyance.

In April 2021, ICE announced that it was formally revoking the 2018 Directive and implementing a new policy outlining more limited circumstances under which civil immigration arrests at or near state courthouses would be authorized. *See* Memorandum from Tae Johnson and Troy Miller, Civil Immigration Enforcement Actions in or near Courthouses (April 27, 2021) (the "April 2021 Memo) (noting that "[t]his memorandum supersedes and revokes" the 2018 Directive).

The April 2021 Memo recognizes that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses and, as a result, impair the fair administration of justice." April 2021 Memo at 1. In order to address this concern, the memorandum provides new guidance on civil immigration arrests in or near courthouses "so as not to unnecessarily impinge upon the core principle of preserving access to justice." *Id.* at 2.

Specifically, the April 2021 Memo now allows civil immigration arrests in or near courthouses only when such an arrest:

> (1) . . . involves a national security threat, or (2) there is an imminent risk of death, violence, or physical harm to any person, or (3) [the arrest] involves hot pursuit of an individual who poses a threat to public safety, or (4) there is an imminent risk of destruction of evidence material to a criminal case.

Absent "hot pursuit," civil immigration arrests in or near courthouses are also authorized by the April 2021 Memo if an individual "poses a threat to public safety," there is no "safe alternative location for such action," and "the action has been approved in advance" by a supervisor. Finally, "[t]o the fullest extent possible," any such arrests shall be conducted "outside of public view" and "in collaboration with courthouse security personnel." *Id.* at 3.

## REASONS TO VACATE THE JUDGMENT BELOW

Because the April 2021 Memo marks a significant change of circumstances—including by revoking the 2018 Directive that was the focus of this litigation—the parties agree that the judgment below should be vacated. Although the scope of the judgment below may be amenable to more than one interpretation, the parties agree that vacatur is warranted under any interpretation of the declaratory and injunctive relief awarded below.

### A. The Judgment May Be Vacated as Moot, If It Is Interpreted as Limited to the 2018 Directive.

This Court may vacate the judgment below by interpreting the judgment as limited to the 2018 Directive. Given ICE's revocation of that

2018 Directive, there would no longer be a live controversy between the parties, and vacatur would be appropriate under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

"A case becomes moot 'when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *E.g.*, *New York City Employees' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (citations omitted); *accord Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir. 1991). Typically, when a case involves a challenge to a government policy, and the policy is rescinded during litigation, then there is no longer a justiciable controversy and the case is rendered moot. *See, e.g.*, *Larsen v. U.S. Navy*, 525 F.3d 1, 3–5 (D.C. Cir. 2008); *Doe v. Shalala*, 122 F. App'x 600, 603 (4th Cir. 2004); *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 274 (D.C. Cir. 2001).

Here, the dispute has become moot because the district court's judgment (including its declaratory and injunctive relief) was directed at the 2018 Directive, which has now definitively been revoked. The district court's declaratory relief was expressly aimed at "ICE's policy of courthouse arrests, *as now embodied in the Directive*." SPA 60, 61 (emphasis added). And although the court's injunctive relief did not

repeat this limitation, the judgment made clear that injunctive relief was subject to the same limitation, because it was the "direct result" of the court's declaration of invalidity. *Id.* Moreover, the court's opinion explained that its holding was limited to the 2018 Directive: the court expressly declined to address the validity of ICE's prior 2014 guidance, which authorized courthouse arrests under much more limited circumstances than the 2018 Directive, since "[a]s a practical matter, [ICE's prior policy] was unlikely to raise a threat of the disruptions and interruptions that the present policy presents." (SPA 40 n.5.) (And, of course, the court had no occasion to pass on the validity of the April 2021 Memo, which had not yet been issued.)

This understanding of the district court's judgment as being limited to the 2018 Directive is further supported by the fact that plaintiffs' claims have from the outset been addressed to the significant policy changes made by the prior presidential administration, as embodied in the 2018 Directive. As the complaint explained, "[t]his lawsuit challenges the federal government's recent unlawful and unconstitutional policy authorizing civil immigration arrests in and around New York State courthouses." JA 20. The factual allegations in the Complaint focused on

9

the 2018 Directive and the abrupt policy shift it embodied. *E.g.*, JA 28-33. And the claims for relief also focused on the 2018 Directive, expressly asking for an order "holding unlawful, vacating, and setting aside the [2018] Courthouse Civil Arrest Directive"; declaring the 2018 Directive unlawful; and seeking a corresponding injunction. JA 54. Plaintiffs' summary-judgment papers reiterated this focus, arguing, for example, that ICE's new "policy of conducting civil immigration arrests in and around New York state courthouses" marked "a sharp and unjustified departure from ICE's prior practice." Pl.'s Mem. in Supp. of Summary Judgment, D.Ct. Dkt. 94, at 1-2, 13, 15, 20.

Now that the 2018 Directive has been expressly revoked and replaced, the parties' dispute over that directive has become moot. Nor is there any indication that the current administration "will revert to" the policy embodied in the 2018 Directive, such that an exception to mootness such as voluntary cessation might apply. *Am. Bankers Ass'n,* 271 F.3d at 274 (quoting *Arizona Pub. Serv. Co. v. E.P.A.*, 211 F.3d 1280, 1296 (D.C. Cir. 2000)). Under these circumstances, vacatur of the judgment below would be appropriate under *Munsingwear*. *Cf. United States v. Microsoft Corp.*, 138 S. Ct. 1186, 1188 (2018) (per curiam) (vacating judgment

where government appealed but case was mooted by change in federal law).

**B.  Vacatur Is Also Appropriate If the Judgment Is Not Construed as Limited to the 2018 Directive, Because the Government's Change in Policy Constitutes a Substantial Changed Circumstance That Was Not Considered Below and Has Eliminated the Dispute Between the Parties.**

Because the district court's grant of injunctive relief does not contain the same explicit limitation to the 2018 Directive that appears in its grant of declaratory relief, it is arguably susceptible to an interpretation that would preclude ICE from conducting any civil immigration arrests in or near courthouses, including those authorized by the April 2021 Memo, thus maintaining a live controversy between the parties. Even under such an interpretation, however, vacatur of the judgment below would be appropriate, because the revocation of the 2018 Directive constitutes a substantial change in circumstance that was not considered below, and plaintiffs did not in their complaint (and do not currently) seek relief from arrests conducted pursuant to the new April 2021 Memo.

Appellate courts possess "broad power" to vacate "'any judgment, decree, or order'" of a lower court and to remand for proceedings "'as may

be just under the circumstances.'" *Lawrence v. Chater*, 516 U.S. 163, 166 (1996) (per curiam) (quoting 28 U.S.C. § 2106). Mootness is not the only basis for such vacatur; rather, "a wide range of developments" might justify vacatur pursuant to the Court's statutory authority. *E.g.*, *id.* at 166. Such developments include "new federal statutes, administrative reinterpretations of federal statutes, new state statutes, changed factual circumstances, and confessions of error or other positions newly taken by the Solicitor General, and state attorneys general," any of which may render appellate review unnecessary or impracticable. *Id.*

For example, in *Kiyemba v. Obama*, 559 U.S. 131 (2010) (per curiam), a challenge to the lawfulness of the detention of certain individuals held at Guantanamo Bay, the Supreme Court vacated the judgment below in light of changed circumstances after being informed that the detainees had since received resettlement offers. Although the case was not moot (because some of the individuals had rejected those offers), vacatur was nevertheless warranted because the "change in the underlying facts may affect the legal issues presented," and "[n]o court ha[d] yet ruled in th[e] case in light of the new facts." *Id.* at 131-132. Similarly, in *Biden v. Sierra Club*, No. 20-138, a challenge to the prior

administration's funding of border-wall construction, the Supreme Court also vacated the judgment below when the new administration announced that it was no longer diverting funds for that construction, even though the dispute was not formally moot.

The same result would be warranted here. The revocation of the 2018 Directive that was the focus of this litigation, and its replacement by the narrower April 2021 Memo, constitute a change of circumstances at least as significant as the changes at issue in *Kiyemba* and *Sierra Club*. No court has yet had a chance to consider, let alone rule on, the lawfulness of the new April 2021 Memo or its narrower grounds for authorizing courthouse civil immigration arrests. And defendants no longer seek to defend the 2018 Directive given their revocation of that policy. In light of these substantially changed circumstances, vacatur of the judgment below—particularly its prospective injunctive relief—would be warranted.

WHEREFORE, the judgment below should be vacated, and the case remanded to the district court so that the action can be voluntarily dismissed without prejudice.

Dated: July 20, 2021
New York, New York

/s/ Ari J. Savitzky
ARI J. SAVITZKY
Assistant Solicitor General